# United States District Court

Southern **DISTRICT OF** California

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)
Express Mail EB874230285US addressed to Mary Walker, 6549 Perth Place, San Diego, Ca 92139.

**FILED**
JUL 29 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ᕮ Cʟ                DEPUTY

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

CASE NUMBER: 08 MJ 2318

I, P.G. Garn, being duly sworn depose and say:

I am a(n) U. S. Postal Inspector
Official Title
and have reason to believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)
The above described Mail article, which is in the custody of the U. S. Postal Service

in the Southern District of California
there is now concealed a certain person or property, namely (describe the person or property)
Controllled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841 (a) (1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband.

in violation of Title 21 United States Code, Section(s) 841 (a) (1), 843(b) and 846 .
The facts to support the issuance of a Search Warrant are as follows:
See the attached affidavit of P. G. Garn, Postal Inspector (incorporated by reference here in).

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence
7/29/08
Date
at San Diego, Ca
City and State

Louisa Porter
Name and Title of Judicial Officer
Magistrate Judge

_____
Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, P. G. Garn, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector assigned to the San Diego Field Office of the Postal Inspection Service and am detailed to the San Diego Integrated Narcotic Task Force as a Task Force Officer. My duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following parcels:

> Express Mail EB874230285US addressed to Mary Walker, 6549 Perth Place, San Diego, Ca 92139 with a return address of Tom Walker, 4478 Shiloh Ridge Trail, Snellville, GA 3003.

> Express Mail EB874230294US addressed to Mary Walker, 6549 Perth Place, San Diego, Ca 92139 with a return address of Tom Walker, 4478 Shiloh Ridge Trail, Snellville, GA 30039.

3. I have been employed as a Postal Inspector for over 17 years, and have been employed by the Postal Service for over 22 years. I am currently assigned to the San Diego Narcotic Task Force as a Task Force Officer. In 1990 and 1995, I received formal training from the Postal Inspection Service regarding individuals using the U.S. Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions. I have also received formal training from the California Highway Patrol (1994) and United States Postal Inspection Service (1992) regarding the illicit use of controlled substances and the objective symptomatology of individuals who are under the influence of controlled substances. In 1994, I received formal training from the Drug Enforcement Administration (DEA) regarding narcotic investigations including street, mid-level, and major trafficking organizations; presumptive field testing, drug recognition, objective symptomatology of drug use, and investigative techniques. In 2002, I received formal drug interdiction training sponsored by the Drug Enforcement Administration

1

conducted in San Diego, CA regarding drug interdiction investigations as well as national and international drug trafficking trends. In June and July 2003, I received formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2003, I received formal training from the DEA. In May 2005, I received additional formal training from the International Narcotic Interdiction Association regarding trends in international and national drug trafficking and investigative methods. In August 2007, I received formal training from the Department of Justice OCDETF and Asset Forfeiture programs on international and national drug trafficking trends. Since, 1994, I have been a member of the California Narcotics Officer Association and have received formal and informal training from this organization as well as read articles written by members regarding drug trafficking and narcotics investigations. Since 1994, I have been a member of the Western States Information Network and have received briefings on drug trafficking trends and investigations by agents, officers, prosecutors and analysts as well as conducted training for other officers, agents, prosecutors and analysts involved in narcotics investigations. I have also conducted training for Postal Inspectors regarding the use of the Postal service to facilitate drug trafficking and money laundering as well as officials with the Australian Federal Police, San Diego Sheriff's Office and San Diego Police Department.

4. Since 1991, I have been involved in hundreds of investigations involving the shipment of controlled substances including marijuana, methamphetamine, cocaine, heroin, opium and pharmaceuticals as well as drug proceeds through the U.S. Mail and other commercial shipping companies such as Federal Express and United Parcel Service (UPS). I have also investigated individuals who have used Postal Money Orders to launder the proceeds from controlled substance transactions. These investigations have resulted in the seizure considerable amounts of illicit drugs, drug related assets and drug related evidence as well as numerous arrests of individuals for violations of federal and state controlled substances laws.

5. Based upon my training, experience and discussions with other agents, I know the following in summary:

   (a) Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

   (b) The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

   (c) Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

   (d) It is also known that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

   (e) Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

      1. Items sent via "Express Mail" or "Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. "Express Mail" is usually requested to be delivered by the next day's mail.

3. "Priority Mail" is usually requested to be delivered within two days of mailing.

4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mailed item(s) have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

6. The information contained in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers and Postal employees. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On July 29, 2009, Postal Inspectors including myself were conducting a routine interdiction of inbound Express Mail at the Midway Processing and Distribution Facility in San Diego, CA. We became suspicious of the following parcels, Express Mail EB874230285US addressed to Mary Walker,6549 Perth Place, San Diego, Ca 92139 with a return address of Tom Walker, 4478 Shiloh Ridge Trail, Snellville, GA 3003 and Express Mail EB874230294US addressed to Mary Walker,6549 Perth Place, San Diego,

Ca 92139 with a return address of Tom Walker, 4478 Shiloh Ridge Trail, Snellville, GA 30039 for reasons which included:

1. The size, shape and appearance of the parcels was consistent with parcels previously identified which contained drug proceeds.

2. The zip code of mailing for EB874230285US was incomplete 3003.

8. On July 29, 2008, San Diego Police Department Detective Daniel Billberry and his trained drug detection dog, "Cajun", conducted an individual exterior inspection of the subject parcels. Det. Billberry told me that Cajun alerted to the presence of the odor of controlled substances coming from the parcel EB874230285US, but not from EB874230294US.

9. Based upon my training and experience, I know that individuals involved in illegal activities routinely use fictitious names and addresses when sending contraband via mail. In this case, the use of the same false name (as set forth below) and mailing address indicates to me that both packages contain contraband, despite the fact that "Cajun" alerted to only one of the packages.

10. I have been advised of the qualifications of the dog handler, Det. Billberry and his narcotic detection dog as described in Attachment A, which is filed in conjunction herewith and incorporated by reference herein.

11. In addition, Detective Steve A. Sloan, Dog Trainer for the San Diego Police Department Canine Training Section, certifying official for the California Narcotic Canine Association and a court recognized narcotic detection canine expert, told me the following in summary:

A. Because of the absorption of the odor of controlled substances, and the narcotics detection canine's inherently keen sense of smell, the narcotic detection canine will continue to alert on the container or item depending on the length of exposure to the controlled substances, the specific controlled substance and the ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been Detective Sloan's experience that a properly trained narcotic detection canine will not alert to all currency. Detective Sloan said the most

5

relevant factor regarding alerts on currency is the threshold amount of narcotic odors that is set in the training of the narcotics detection canine. Detective Sloan's experience is that canine training must include the establishment of a lower threshold of approximately one gram of a controlled substance or more to ensure the canine is alerting to more than the average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These substances have included food, plastic bags and wrap, tape controlled substance adulterants. Circulated and non-circulated U.S. currency. Proofing is a method used in training to ensure the canine alerts only to odors for which it is trained to alert.

B. Det. Billberry told me that he agrees with the above statement and he includes proofing as part of his canine training.

12. On July 29, 2008, Postal Inspector Megan Bradley, Chula Vista Police Department Agent Donald Clark and I went to 6549 Perth Place to conduct further investigation and the following occurred in summary:

Inspector Bradley and I went to the front door of the residence and I knocked on the door and rang the door bell. An unidentified black adult male answered the door. Inspector Bradley and I identified ourselves as a Postal Inspectors both verbally and by presenting our credentials. I told the male I had two packages for Mary Walker that we had some questions about. The male said he did not know Walker. We showed him the packages and confirmed the address (6459 Perth Place). Again the male said Walker did not live at the address. The male went inside and spoke with an other adult who we could not see asking about Mary Walker. The male then told Inspector Bradley and I that Walker did not live at the address and was not known to the male or the other resident. I then asked the male for identification. The male said, "I don't want to talk to you" and closed the door. The other agents and I then left the scene with out incident, and I secured the parcels pending an application for a search warrant.

13. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances are being concealed in the Express Mail article as described and seek the issuance of a search warrant directing the search of the articles as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

                        P. G. Garn
                        Postal Inspector

Sworn to before me, and subscribed in my presence, on this 29 day of July, 2008.

U. S. Magistrate Judge

7

## ATTACHMENT A
### For
### Daniel M. Billberry and K-9 Cajun

Daniel M. Billberry is currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer. Det. Billberry has been a police officer for over 21 years and has worked as a narcotic detection dog handler since June 2005. Det. Billberry is a member of the California Narcotic Canine Association and the California Narcotics Officers Association.

Detective Billberry has participated in over 200 arrests of persons for violations of controlled substance laws. Det. Billberry has in excess of 300 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA Narcotic Investigator Course, the 40 hour DEA Clandestine Laboratory Investigator Course, the 40 hour Drug Trafficker Interdiction Characteristics Course, the 40 hour DEA Operation Jetway Investigator Course and the 40 hour SkyNarc Criminal Interdiction Course. Det. Billberry has testified as an expert in the field of narcotics in state court. Det. Billberry is familiar with the manner in which said substances are packaged, marketed and consumed. Detective Billberry has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. Detective Billberry has worked in an undercover capacity in purchasing controlled substances.

From May 1999 to June 2005, Det. Billberry was assigned to the Narcotic Street Team. Det. Billberry was involved in over 200 cases either as the case agent or assisting detective. Detective Billberry has observed hundreds of persons involved in narcotic trafficking and has developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On June 4, 2005, Detective Billberry was assigned to the NTF Commercial Interdiction Team. Det. Billberry has been involved in over 150 parcel cases where he utilized surveillance techniques, profiles of persons and parcels and his narcotic detection canine. Det. Billberry has observed several hundred parcels during the course of his duties. On selected parcels, Det. Billberry has observed certain characteristics that although not illegal, when taken in their totality lead him to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment.

Det. Billberry has been able to confirm his suspicions by utilizing a narcotic detection canine to alert to packages. It has come to Det. Billberry's attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service and Federal Express security that the smugglers are utilizing extreme measures to shield the odor of the controlled substances from the canine.

In November 2007, Detective Billberry was assigned to train K9 "Cajun" in the area of narcotic detection. Detective Billberry and "Cajun" received approximately 20 hours of training and evaluation in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan. Steve Sloan is a certifying official for the California Narcotic Canine Association. Prior to Det. Billberry being assigned "Cajun", "Cajun" was originally trained and certified by a United States Border Patrol designated trainer as a narcotic detection canine where he was deployed with a Border Patrol Canine handler for approximately one year. "Cajun" was donated to the San Diego Police Department in November 2007, after his handler was promoted. "Cajun" was assigned to work with San Diego Police Detective, Daniel Billberry on this date.

On December 20, 2007, "Cajun" was certified as 100% proficient in the detection of Heroin, Cocaine, Marijuana and Methamphetamine by Steve Sloan who is a certifying official for the California Narcotic Canine Association.

Cajun's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Subsequent to Cajun's certification, Cajun has alerted 11 times where 11 search warrants have been obtained on his alerts. Cajun has alerted on several occasions where the controlled substances are seized when a warrant is not required because a warrant or consent has already been obtained.

Detective Billberry and "Cajun" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Detective Billberry, a properly trained narcotic detection canine will not alert to all currency. Det. Billberry has witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been Detective Det. Billberry's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Det. Billberry's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###

(06/03/08)

4